UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEAN RUSSELL SCHALLENKAMP,<br><br>Defendant. | 5:22-CR-50072-CCT<br><br>**ORDER GRANTING MOTION<br>FOR COMPASSIONATE RELEASE** |

Defendant, Dean Russell Schallenkamp, filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Docket 60. The Federal Public Defender filed a supplement to Schallenkamp's motion. Docket 70. Plaintiff, the United States of America, filed a response in opposition to the motion. Docket 74. The Federal Public Defender filed a reply to the United States' response. Docket 77. For the following reasons, Schallenkamp's motion for compassionate release is granted.

## BACKGROUND

In April 2022, Schallenkamp was charged with receipt of child pornography, obscene visual representations of the sexual abuse of children, and possession of child pornography. Docket 1. On December 12, 2022, Schallenkamp entered a plea of guilty, pursuant to a plea agreement, to receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). Docket 38. The agreement provided that the remaining charges would be dismissed. Docket 29 ¶ C. On April 10, 2023, the court sentenced Schallenkamp to 60 months in

custody, the mandatory minimum, followed by 5 years of supervised release.[1] Docket 49 at 2-3. Schallenkamp's projected release date is March 15, 2027. *See Find an Inmate*, Fed. Bureau of Prisons, (register number 01977-510; last visited February 9, 2026).

Schallenkamp seeks compassionate release, alleging extraordinary and compelling reasons for release under U.S.G.G. § 1B1.13(b)(1)(B) and U.S.G.G. § 1B1.13(b)(1)(C). Docket 60 at 6–7. He cites medical circumstances, serious functional impairment, and deterioration in physical health because of the aging process that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. Docket 60 at 6; *see* U.S.G.G. § 1B1.13(b)(1)(B). Schallenkamp further indicates that he is suffering from a medical condition that requires long-term or specialized care that is not being provided and without which he is at risk of serious deterioration in health or death. Docket 60 at 7; *see* U.S.G.G. § 1B1.13(b)(1)(C).

## DISCUSSION

Sentences are final judgments, meaning a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C § 3582(c). Congress passed The First Step Act (FSA) in 2018, facilitating an exception to the finality of sentences. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In relevant part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated

---

[1] Schallenkamp was sentenced by Judge Jeffrey L. Viken, now retired.

defendants to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). A reduction in sentence must consider the 18 U.S.C. § 3553(a) sentencing factors and be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The Sentencing Commission's policy statement on compassionate release requires "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the public. U.S.S.G. § 1B1.13(a)-(b). The policy statement was amended on November 1, 2023, to reflect the FSA's authorization for federal courts to rule on compassionate release motions initiated by defendants. U.S.S.G § 1B.13, amend. 814. Amendment 814 to the Sentencing Commission policy statement also expands the list of extraordinary and compelling reasons justifying compassionate release from federal detention. *See id.*; *2023 Amendments in Brief*, U.S. Sent'g Comm'n, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last visited Dec. 12, 2025).

**I. Administrative Exhaustion**

Before the FSA's passage, only the Bureau of Prisons (BOP) Director had the authority to bring a compassionate release motion on a defendant's behalf.

3

*See* 18 U.S.C. § 3582(c)(1)(A) (2002), *amended by* 18 U.S.C. § 3582(c)(1)(A) (2018). With the enactment of the FSA, Congress has permitted courts to grant a motion for a reduction in sentence filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of thirty days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The United States contends that Schallenkamp has not exhausted his administrative remedy, as required by 18 U.S.C. § 3582(c)(1)(A). Docket 74 at 2, 4. It argues that Schallenkamp "provides no documentation supporting" his claim that "he submitted a request for compassionate release to the warden of his facility in April 2025." *Id.* at 4. Schallenkamp disagrees, asserting that the United States "overlooks the handwritten administrative request provided to the Court with [his] initial motion." Docket 60 at 4-5. However, to avoid any issue concerning exhaustion, defense counsel filed a second administrative request on Schallenkamp's behalf on October 1, 2025. *See* Exhibit A. In the 30 days since that request, there has been no response received. *Id.*

The Court agrees that Schallenkamp's initial motion was submitted to the warden on 4/17/25 and that he had received "no response as of today 5/19/25." *See* Docket 60 at 3. Regardless, with the filing of the second request, there is now no question that Schallenkamp has exhausted his administrative remedy. Thus, the Court considers Schallenkamp's motion on the merits.

**II. Extraordinary and Compelling Reasons**

Congress directed the Sentencing Commission to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission's policy statement, as amended in November of 2023, responded by identifying six categories of "extraordinary and compelling reasons" justifying compassionate release. U.S.S.G § 1B1.13(b)(1)-(4), amend. 814. The first four categories pertain to a defendant's: (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) compelling family circumstances; and (4) victimization by correctional staff while in custody. *Id.* A fifth catch-all category exists for a "circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The sixth category arises if the defendant has received an unusually long sentence, served at least ten years, and a change in law produces a gross disparity between the sentence being served and the sentences likely to be imposed at the time the motion was filed, after considering the individual circumstances of the defendant. U.S.S.G. § 1B1.13(b)(6).

Rehabilitation of the defendant is not an extraordinary and compelling reason in and of itself but "may be considered in combination with other circumstances in determining whether and to what extent a reduction" in

sentence is warranted. U.S.S.G. § 1B1.13(d). An extraordinary and compelling reason need not be unforeseen at the time of sentencing to warrant compassionate release. U.S.S.G. § 1B1.13(e).

Schallenkamp argues that compassionate release is warranted under the other extraordinary and compelling reasons category. Docket 60 at 4-5, 6–7; Docket 77 at 2. The United States does not contest that Schallenkamp suffers from a myriad of medical conditions and requires numerous medications and medical aid apparatuses. Docket 74 at 5-8. It does, however, argue that Schallenkamp does not meet the requirements under § 1B1.13(b)(1)(B). It contends that Schallenkamp "has not shown that his conditions 'substantially diminish the ability of the defendant to provide self-care within the environment of a correctional facility[.]'" Docket 74 at 7-8. The United States claims that Schallenkamp "has also failed to show that these are conditions 'from which he . . . is not expected to recover[.]'" *Id*. Alternatively, the United States argues that "[i]f necessary, BOP would house Schallenkamp at a federal medical center" and could elevate his level of care. Docket 74 at 9.

This Court has reviewed the medical records on file in this case. The recent medical records indicate that Schallenkamp continues to suffer from numerous medical conditions, including Type 2 diabetes mellitus, hyperlipidemia, major depressive disorder, glaucoma, presbyopia, otitis externa, hypertension, periodontitis, polyosteoarthritis, osteoarthritis in the hip and knee, gout, bilateral shoulder pain, enlarged prostate with lower urinary tract symptoms, abnormal findings in his other body fluids, and a burn of the

left upper chest, back, and shoulder. Docket 61 at 11-12, 65-66. Schallenkamp is on numerous medications for these various conditions. *Id.* at 50-51. The BOP has accommodated Schallenkamp with a lower bunk designation, authorization for use of alternate institutional shoes, a 4-wheel walker, a knee brace, and a zip lock bag for ice to aid with his right knee. *Id.* at 76. Schallenkamp is a "Care Level 2 Medical and Care Level 1 Mental health inmate." *Id.* at 126. Care Level 2 is described as "stable, chronic care." *Id.* at 125.

### A. Removal of Teeth for Knee Replacement

Specifically, Schallenkamp, through counsel, argues that he suffers from significant medical conditions, including the need for dentures after his teeth were removed in preparation for knee replacement surgery. Docket 70 at 6; Docket 61 at 11-14 (indicating that in August 2024, a medical plan was developed for a "full mouth extraction with bilateral mandibular tori removal as [unknown] prep for full dentures and *pre-op for total knee replacement surgery*" (emphasis added)). He additionally argues that this situation leaves him without teeth in prison, where the diet is meager and being "toothless" is dehumanizing. Docket 70 at 7. Finally, he claims that the BOP is unprepared, unwilling, or incapable of providing him dentures. *Id.* at 6.

The United States suggests that the removal "would not have happened had the teeth been healthy, meaning this was likely anyway." Docket 74 at 6. It contends that "what is unclear, and what Schallenkamp fails to provide any evidence regarding, is his denture situation and special diet." *Id.* The Court

7

disagrees. Schallenkamp indicates in his supplement that he "is unable to eat hard or crispy foods, like cereal for breakfast." Docket 70 at 8. He could eat oatmeal but must pay for that out of his commissary funds. *Id.* For lunches and dinner, Schallenkamp "has great difficulty getting a nutritious and filling meal." *Id.* He cannot easily eat meats provided to inmates, except for hamburger, which can be "gummed." *Id.* He also cannot eat vegetables unless he can mash them sufficiently to swallow them comfortably. *Id.*

  The United States does not dispute that Schallenkamp needs dentures. *See* Docket 74 at 6. Indeed, the record reflects that the oral surgery to remove his teeth was conducted at FCI Thomson, in Thomson, Illinois. Docket 61 at 86-87. Schallenkamp was then moved and on January 24, 2025, became housed at FCI Milan in Milan, Michigan, a facility where dentures are not available. Docket 70 at 7; Docket 61 at 126. The Court finds that Schallenkamp has shown he suffers from a serious medical condition that substantially diminishes his ability to provide self-care within the correctional facility environment and from which he is not expected to recover. Therefore, the Court concludes that this constitutes an extraordinary condition that creates significant hardship and is a compelling basis for compassionate release.

  Although it would be unnecessary to address Schallenkamp's additional medical conditions, which may not alone warrant compassionate release, the Court nonetheless discusses Schallenkamp's additional conditions requiring medical treatment beyond that currently provided by BOP.

### A. Right Knee Replacement

Schallenkamp argues that he has been preparing for knee replacement surgery for over a year and has expected one for far longer. *Id.* According to Schallenkamp's PSR, the right knee replacement was expected before his sentencing in early 2023. Docket 45 ¶ 54. Schallenkamp's left knee was replaced and he has scars from that surgery. *Id.* In June 2023, when Schallenkamp first went into custody, he suffered from "[o]steoarthritis of knee . . . severe DJD [Degenerative Joint Disease] r knee." Docket 61 at 66. Schallenkamp is required to be in the lower bunk due to his "[d]End stage DJD in right knee," has had a knee brace in prison since July 2023, has been using a 4-wheel walker since December 2024, and required alternate institution shoes since April of 2025. *Id.* at 73.

In January 2025 Schallenkamp advised his medical provider that he was "supposed to have knee replacement, just had all the pre-op issues addressed, but instead of transferring for a knee replacement, he ended up here." *Id.* at 11. Schallenkamp believed, at that time, that he "may release as early as Sept this year, at this point will wait for knee replacement." *Id.* It is now 11 months later, Schallenkamp is still in custody, his knee degeneration is continuing and worsening, and he is located at a facility where knee replacement surgery is not possible.

### B. Other Medical Conditions

During his incarceration, Schallenkamp's PSA test results of his prostate health have repeatedly been elevated, well over the 4.50 ng/mL standard. *See,*

9

*e.g.,* Docket 61 at 90 (9/24/24 "PSA, Total . . . 19.45"); *Id.* at 88 (2/11/25 "PSA, Total . . . 18.19"). These elevated results were received as recently as April of 2025. *Id.* at 91-97. Schallenkamp notes that this is a significant increase from before his incarceration, when his "PSA was holding steady at 9." *Id.* at 4. The records indicate that Schallenkamp's prostate health is also worsening while in custody.

Schallenkamp has arthritis "in both shoulders which causes pinched nerves in [his] neck and shoulders." Docket 60 at 4. He claims that his right hip "is on its way to being replaced" because he "tell by going through the same issues with [his] left hip which has been replaced." *Id.* at 9.

### C. Conclusion

It is this Court's opinion that Schallenkamp's medical and physical condition, including the circumstances of his confinement and lack of available medical care, render him eligible for a reduction in sentence. U.S.S.G. § 1B1.13(b)(1) and (5). His physical condition has significantly diminished and continues to deteriorate. He is both "suffering from [ ] serious physical or medical condition[s]" and "experiencing deteriorating physical [ ] health because of the aging process," which are "substantially diminish[ing his] ability . . . to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13(b)(1)(B). Although the United States claims it could house Schallenkamp at a federal medical center, it does not also assert that Schallenkamp would receive dentures and undergo knee surgery. Moreover, it is undisputed that the United States chose to house him at a facility that is

unable to provide Schallenkamp the medical care he needs. This leaves Schallenkamp, a 64-year-old individual in the prison environment, with a limited ability to care for himself unable to receive necessary and appropriate treatment for his worsening conditions. Schallenkamp's medical conditions, individually or collectively under U.S.S.G § 1B1.13(b)(5), provide bases to find extraordinary and compelling reasons for relief.

### III. Sentencing Factors of § 3553(a)

The § 3553(a) sentencing factors and the policy statements issued by the Sentencing Commission confirm that compassionate release is warranted in this case. Prior to the instant offense, Schallenkamp had no criminal history points. Docket 45 ¶ 44. His only criminal history, besides the current offense, is limited and occurred 30-40 years ago. *Id.* at ¶¶ 40-42. Prior to the current offense, Schallenkamp had no other reports of contact with law enforcement for over 25 years. *Id.* at ¶¶ 42, 45-7.

The United States argues that the 18 U.S.C. § 3553(a) factors preclude relief to Schallenkamp, given the nature of his offense and the duration of his illegal activities. Docket 74 at 10-12. It contends that Schallenkamp "has not shown he is not a danger to the safety of others under USSG § 1B1.13(a)(2)." *Id.* at 12. In support, the United States directs the Court to the information in the record that Schallenkamp had images of child pornography in his possession for over 11 years before he was indicted. *Id.* at 11 (citing Docket 30 at 2). However, there is no evidence that Schallenkamp escalated his illegal conduct to a hands-on offense or that he engaged in any other form of

11

victimization of others over those 11 years. *See* Docket 77 at 5. As stated above, Schallenkamp has no other reports with law enforcement and that 11-year history shows that he is not inclined to escalate his crime or to pose a greater risk to the safety of others upon release. *See id.* Schallenkamp did not exhibit such a risk in over a decade of viewing child pornography, he is unlikely to do so if released now. *See id.*

As attested to in the numerous letters of support, Schallenkamp was an asset to the community and his family throughout his life. *Id.* He has significant ties to the Deadwood area, with family and long-term friends who remain supportive of him even after knowing of the crime he committed. *See generally* Docket 44. According to U.S. Probation, Schallenkamp did not violate any of the conditions of his release in the seven months he was out on bond. *See generally* Docket 37. Additionally, while in custody awaiting sentencing, U.S. Probation reported no institutional adjustments. Docket 45 ¶ 4.

The harm that Schallenkamp posed to others, by downloading and viewing pornographic materials of minors, has been identified and addressed. A psychosexual evaluation was performed and included a risk assessment for contact sexual offenses. Docket 47. The evaluation indicates that Schallenkamp has a low to low-moderate risk to reoffend. *Id.* at 8. The evaluation suggests that, given the nature of Schallenkamp and the crime he committed, individual, not group therapy, is recommended. *Id.* Schallenkamp will be better able to attend individual treatment outside of the prison setting given the flexibility of his schedule and the broader services offered outside of

prison. Moreover, his rehabilitative and medical needs can be more fully met outside of custody with the support of his family and friends. *See, e.g., United States v. McKinstry*, 2023 WL 4082954 at *4 (D.S.D. June 20, 2023).

Schallenkamp has no reported history of inappropriate sexual contact or similar concerns that give the Court pause. There are no allegations or suggestions by his family members, or anyone else, that suggest his criminal behavior goes beyond the scope of activities identified in relation to the instant offense.

Schallenkamp has a release plan, which indicates he plans to live with his mother in Nemo, or in nearby Rapid City, where medical care and counseling are readily available through the VA. His re-entry plan to stay in his lifelong community, with the ongoing support of friends and family, will help prevent recidivism and maximize public safety. Although the instant offense was very serious, the crime was non-violent. Schallenkamp readily accepted responsibility and admitted to the offense in a timely manner. *See* Docket 45 ¶¶ 5, 22, 35-36

This Court finds that Schallenkamp's age, health conditions, and the inability for him to receive appropriate medical care in his current institution meet the extraordinary and compelling reasons set by Congress.

After careful consideration, the Court concludes that a sentence of time served is sufficient but not greater than necessary to accomplish the goals of federal sentencing, without contravening its intent.

## CONCLUSION

Schallenkamp has satisfied the extraordinary and compelling reason standard for compassionate release. Thus, it is

1. ORDERED that Schallenkamp's motion for relief under the FSA (Docket 60) is GRANTED.

2. Schallenkamp's term of imprisonment is hereby reduced to time served, subject to the following paragraphs.

3. Execution of this order is stayed for fourteen (14) days to allow the Bureau of Prisons and United States Probation an opportunity to make the necessary arrangements for Schallenkamp's release.

4. Upon release from BOP custody, Schallenkamp will be on supervised release for a term of five (5) years.

5. The United States Probation Office shall prepare an amended judgment consistent with this order.

6. The following are the standard and special conditions of supervision that shall apply to Schallenkamp.

**Standard Conditions of Supervision:**

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, you will receive instructions from the Court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the Court or the probation officer.

4.  You must answer truthfully the questions asked by your probation officer.

5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6.  You must allow the probation officer to visit you at reasonable times, at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

8.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

9.  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

10. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the Court.

11. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

12. You must follow the instructions of the probation officer related to the conditions of supervision.

**Special Conditions:**

1. You must not initiate, establish, or maintain contact with any male or female child under the age of 18 nor attempt to do so except under circumstances approved in advance and in writing by the probation office.

2. You must participate in the probation office's Computer/Internet Use and Monitoring Program and comply with the provisions of the participation agreement used in the District of South Dakota. Participation in this program is in lieu of having all access to a computer denied. As part of the Program, you must consent, at the direction of the probation office, to having installed on your computer(s) at your expense, any hardware or software systems to monitor computer use or prevent access to particular materials.

3. You must submit your person, residence, place of business, vehicle, possessions, computer, smart phone, tablet, or any other internet capable device (including passwords) to a search conducted by a United States probation officer without a warrant when the officer has reasonable suspicion of a violation of a condition of supervision.

4. You must participate m sex offender treatment and submit to polygraph examinations as directed by the probation office.

Dated February 9, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE